Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with some modification.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. On 1 October 1997, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant-employer.
3. Travelers Property Casualty is the duly qualified insurer for defendant-employer.
4. A set of thirteen exhibits identified in paragraph 9 of the Pre-Trial Agreement is admitted into evidence.
5. A Form 22 Statement of Days Worked and Earnings of Injured Employee, payroll, and attendance records received from defendants' counsel on 28 September 1998 are admitted into evidence.
6. A photocopy of plaintiff's employment authorization card, received by the Industrial Commission on 22 June 1998, is admitted into evidence.
7. Clinic notes dated 20 May 1998 and 3 June 1998 from Dr. Benedict and additional records from ProActive therapy, received from plaintiff's counsel on 25 June 1998, are admitted into evidence.
8. A 10 July 1998 clinic note from Dr. Benedict, received from plaintiff's counsel on 24 July 1998, is admitted into evidence.
 * * * * * * * * * * *
Based on the credible evidence of record, the Full Commission makes the following additional:
FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was forty-five years old. Plaintiff did not speak English and testified through an interpreter. Plaintiff was unfamiliar with non-metric length measurements, but she was familiar with non-metric weight measurements.
2. Plaintiff began working for defendant-employer in May 1993. Plaintiff last worked for defendant-employer on or about 1 October 1997. Plaintiff was absent from work for sixteen days in August 1993. Plaintiff took a medical leave of absence from 1 October 1993 through 31 October 1993 and from 29 November 1993 through 19 June 1994. On 2 February 1995, plaintiff began another medical leave of absence that continued through 21 October 1995. Plaintiff was absent for thirty-seven days from 24 October 1995 through 8 December 1995. Plaintiff began another medical leave of absence on 18 December 1995 that continued through 20 April 1996. From 21 April 1996 through 1 October 1997, plaintiff worked as an off bearer. During this period plaintiff was absent more than twenty-one days.
3. During her employment with defendant-employer, plaintiff worked in three different positions (painting, patching, and off bearer). Plaintiff worked in the painting department for approximately three months. In this position, plaintiff painted furniture. The position required some lifting. Defendant-employer transferred plaintiff from the painting department because she complained of being bothered by some of the chemicals used in the department. Plaintiff next worked in the patching position, where she filled holes and cracks in lumber. The position required plaintiff to lift pieces of wood onto a work surface, patch them, and then lift the pieces of wood from the work surface and stack them onto a pallet. Plaintiff worked in this position for approximately eight months. Plaintiff did not regularly lift above shoulder height in performing her patching duties.
4. Plaintiff next worked in a position where she stood along a conveyor belt and removed pieces of cut lumber from the belt and placed them into stacks on pallets. Defendant-employer referred to this position as "off bearer for cutoff." Four employees worked in this position, with two employees located on each side of the belt. Each employee was responsible for removing lumber of certain sizes and stacking the lumber onto pallets. The conveyor belt was approximately as high as plaintiff's waist. After moving to the off bearer position, plaintiff continued to work in the patching position approximately one day per week.
5. Plaintiff's job with defendant-employer did not require her to throw or toss lumber and did not require her to lift wood weighing forty-five pounds. The maximum weight she was required to lift was approximately fifteen pounds. Ordinarily, plaintiff and the other off bearers stacked wood onto a pallet until the stack reached their eye level. Plaintiff was required to lift to shoulder height when placing the last pieces of wood onto a stack, but the majority of her lifting was below shoulder height.
6. The lumber on the belt was usually cut into four different sizes: (1) one by four by six and one-half inches, (2) one by four by eighty-two inches, (3) two by six by five and one-half inches, and (4) two by six by seventy four and one-half inches. The largest pieces of lumber weighed approximately fifteen pounds and were used for making bed rails and sofa frames. The smallest pieces of wood were approximately the size of a videotape cassette. When plaintiff removed smaller pieces of lumber from the line, she gathered several pieces together before lifting them from the belt and stacking them onto a pallet. Defendant-employer produced more small pieces of lumber than large pieces.
7. About six months prior to 1 October 1997, plaintiff began experiencing pain in her right shoulder. Plaintiff's right shoulder pain was caused by a partial, under-surface rotator cuff tear and tendinitis or bursitis. Plaintiff first received treatment for these conditions from Dana L. Garrett, M.D. Dr. Garrett treated plaintiff conservatively, but when her condition failed to improve, Dr. Garrett referred plaintiff to an orthopedic surgeon, Frederick E. Benedict, M.D. Initially, Dr. Benedict also treated plaintiff conservatively. However, on 5 February 1988, Dr. Benedict performed arthroscopic surgery, during which he debrided the partial rotator cuff tear and performed an acromioplasty.
8. Rotator cuff pathology is associated with lifting, especially overhead use of the arm. Reaching and lifting items also put stress on rotator cuff tendons. Rotator cuff pathology is typically associated with overhead throwing sports, overhead lifting, and overhead reaching. Rotator cuff pathology is an ordinary disease of life. Rotator cuff tears are common and are experienced by persons who have light-duty, sedentary jobs, and by persons who have physically demanding jobs. Rotator cuff conditions are sometimes occupationally related, but many times they are not. Individuals have different thresholds for development of rotator cuff pathology. The number of lifting cycles and the amount of weight being lifted are relevant to a determination of whether an individual will develop rotator cuff pathology.
9. Plaintiff had a preexisting propensity for rotator cuff problems and her employment with defendant-employer aggravated her preexisting condition to some degree. However, the evidence fails to establish that plaintiff's employment was a significant contributing factor to her rotator cuff and tendonitis or bursitis, or that her employment placed her at an increased risk of developing a rotator cuff tear and tendinitis or bursitis as compared to members of the general public not so employed.
10. Plaintiff's right shoulder conditions are ordinary diseases of life, and her employment with defendant-employer did not create hazards distinguished from or in excess of the hazards attending employment in general.
 * * * * * * * * * * *
The foregoing findings of fact and conclusions of law the Full Commission enters the following:
CONCLUSIONS OF LAW
1. Plaintiff failed to establish that her right shoulder rotator cuff tear and tendinitis or bursitis were due to causes or conditions that were characteristic of and peculiar to her employment with defendant-employer or that plaintiff's employment with defendant-employer put her at an increased risk of contracting her right shoulder conditions as compared to members of the general public not so employed. G.S. 97-53(13).
2. Accordingly, plaintiff did not sustain an occupational disease under the Act.
G.S. 97-53(13).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
O R D E R
1. Plaintiff's claim for compensation under the Act is DENIED.
2. Each party shall bear its own costs.
 S/ _____________________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ ______________ LAURA K. MAVRETIC COMMISSIONER
S/ ______________ DIANNE C. SELLERS COMMISSIONER